RECEIVED
IN ALEXANDRIA, LA.
MAR 31 2010
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DONALD MCKINNEY, ET AL. | CIVIL ACTION NO. 09-229 |
| VERSUS | JUDGE TRIMBLE |
| WAL-MART LOUISIANA, LLC | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court is a motion for summary judgment[1] as to all claims by plaintiffs filed by defendant Wal-Mart Louisiana, LLC ("Wal-Mart"). For the reasons expressed herein below, the court finds that Wal-Mart's motion should be GRANTED.

### I.   BACKGROUND

Plaintiff Nani Lee McKinney ("Ms. McKinney") is the President and sole officer of Nanimac, Incorporated, doing business as "Subway Wal-Mart Marksville" ("Nanimac"), organized under the laws of the State of Louisiana as an S Corporation.[2] Nanimac owns the Subway Restaurant franchise located inside the Marksville, Louisiana location of Wal-Mart.[3] Plaintiff Donald McKinney ("Mr. McKinney") is married to Ms. McKinney, but is not an officer or employee of Nanimac.[4]

On September 3, 2008, plaintiff arrived at Wal-Mart sometime between five and seven a.m.

---

[1] R. 12.

[2] Deposition of Donald McKinney [R. 12-5] at 17: 17 - 18; 24:12 - 13.

[3] Id.

[4] Id. at 17:7-13; 24:15-23.

1

(5:00 a.m. - 7:00 a.m.) in order to check on the condition of his wife's Subway restaurant following Hurricane Gustav. Mr. McKinney says that he received a phone call the night before letting him know to be at the store at five a.m. and that he would be allowed in the store to check on the restaurant.[5] He and many Wal-Mart employees waited to get into the store until manager Bernadette Noil ("Noil") arrived at approximately seven a.m. (7:00 a.m.).[6] Mr. McKinney claims that Noil allowed him alone to accompany her into Wal-Mart, but he came back outside because there was not enough light in the store to see to his tasks at that time.[7]

Mr. McKinney asserts that about twenty (20) minutes lapsed before he made a second attempt at checking on the restaurant.[8] The second time, he followed approximately twenty-five (25) Wal-Mart employees into the store and was the last person to enter the building.[9] Just as before, he entered the building through the side door, near the shopping cart corral and turned left in front of the carts to head toward the Subway restaurant.[10] During this second trip into the store, Mr. McKinney claims he slipped on some standing water and fell near the shopping cart corral, causing injuries to his left shoulder, left rib cage, left hip bone, left index finger and neck.[11]

---

[5] Id. at 55:22 - 56:5.

[6] Id. at 56:16-22.

[7] Id.

[8] Id. at 64:9-15.

[9] Id. at 64:16 - 24.

[10] Id. at 60:2-11; 65:11-15; 66:7-10.

[11] Id. at 34:17 - 35:8. The court notes that plaintiff is unsure whether or not his neck pain is related to his slip and fall, but claims that the pain began after the accident at issue in this case.

Plaintiffs filed suit against Wal-Mart on December 9, 2008 in the Twelfth Judicial District Court for the Parish of Avoyelles, Louisiana, alleging that Wal-Mart breached its duty of care to plaintiff by failing to warn him of the dangerous condition of the floor.[12] Mr. McKinney claims damages under La. Civ. C. Art. 2315 for pain and suffering, mental anguish, humiliation and aggravation, loss of enjoyment of life, loss of earning capacity, permanent scaring and disfigurement and debilitating injury.[13] Ms. McKinney joins her husband as party plaintiff in this matter, asserting a claim for loss of consortium under La. Civ. C. Art. 2315.[14]

Defendant Wal-Mart removed the case to this court pursuant to 28 U.S.C. § 1441 based on this court's diversity jurisdiction under 28 U.S.C. § 1332, asserting that it is a Delaware corporation authorized and doing business in Louisiana and plaintiffs are Louisiana domiciliaries and, additionally, that plaintiffs' demands exceed $75,000, exclusive of interests and costs.[15]

Defendant now appears to urge summary judgment in its favor as to all claims by plaintiffs on the basis that Wal-Mart did not owe a duty to plaintiff at the time of the accident. Alternatively, if a duty was owed, Wal-Mart argues that it fulfilled its duty and, thus, no breach may be proven, making summary judgment appropriate at this time.

We consider defendant's motion below.

---

[12] Plaintiffs' state court petition [R. 1-1].

[13] Id. at ¶ 7.

[14] Id. at ¶ 8.

[15] Notice of Removal [R. 1].

## II. Applicable Standard

Wal-Mart's motion requests summary judgment pursuant to Fed. R. Civ. P. 56. In ruling on such a motion, we must determine whether the "...pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any show that there is no genuine issue as to any material fact..."[16]

A "material fact" is one which, given its resolution in favor of one party or another, might affect the outcome of the suit under applicable law.[17] An issue is considered "genuine" when the evidence leaves open the possibility that a rational trier of fact might still return judgment in favor of the nonmoving party.[18]

Once the moving party has carried its burden of showing an absence of evidence to support the non-moving party's case, the burden shifts to the non-party to come forward with specific facts showing a genuine factual issue for trial.[19] "Conclusory denials, improbable inferences, and legalistic argumentation" are not an adequate substitute for specific facts showing that a genuine issue of material fact remains to be tried.[20] Evidence presented, whether in support of or in opposition to a motion for summary judgment, must be of such character that it would be admissible

---

[16] Fed. R. Civ. P. Art. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); American Home Assurance Co. v. United Space Alliance, 378 F.3d 482, 486 (5th Cir. 2004).

[17] Anderson, supra, 477 U.S. 242, 248.

[18] Hamilton v. Segue Software, Inc., 232 F.3d 473, 477 (5th Cir. 2000), citing Anderson, supra, 477 U.S. 242, 248.

[19] Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[20] SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993).

at trial.[21] Where both parties have presented contradictory evidence, the court will resolve all such controversy in favor of the non-moving party, viewing the facts and evidence in the light most favorable thereto. General averments will not suffice, however, in place of specific factual proofs, as the court will not assume the existence of any material fact issue not pled by the non-moving party.

If the moving party fails to demonstrate the absence of material fact questions or if the non-moving party, on the other hand, succeeds in demonstrating the existence of such questions, the motion must be denied.

### III. ANALYSIS

Plaintiffs' claims allege negligence by Wal-Mart and liability for damages under La. Civ. C. Art. 2315. A federal court sitting in diversity applies the substantive law of the forum state when there is no conflict of laws issue raised.[22] Since no conflicts of law are alleged by the parties and our review of the issues reveals none, we apply Louisiana law as the substantive law of the forum state, which requires analysis of negligence claims under the duty/risk theory.[23]

Duty/risk theory requires that plaintiffs alleging negligence demonstrate the following

---

[21] Fed. R. Civ. P. Art. 43(a); Roucher v. Traders & General Ins. Co., 235 F.2d 423, 424 (1956).

[22] Eerie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Mumblow v. Monroe Broadcasting, Inc., 401 F.3d 616 (5th Cir. 2005) (citing Schneider Nat'l. Trasp. V. Ford Motor Co., 280 F.3d 532, 536 (5th Cir. 2002), W.R. Grace & Co. v. Cont'l. Cas. Co., 896 F.2d 865, 874 (5th Cir. 1990)).

[23] Roberts v. Benoit, 605 So.2d 1032 (La. 1991); Westchester Fire Ins. Co. v. Haspel-Kansas Inv. Partnership, 342 F.3d 416 (5th Cir. 2003) (citing Pinsonneault v. Merchants & Farmers Bank & Trust Co., 816 So.2d 270, 275-76 (La. 2002)).

elements of their claims:

> (1) that defendant had a duty to conform his or her conduct to a specific standard of care (the duty element);
> (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach element);
> (3) the defendant's substandard conduct was a cause-in-fact of plaintiffs' injuries (the but-for causation element);
> (4) the defendant's substandard conduct was the legal cause of plaintiffs' injuries (the scope of duty element); and
> (5) plaintiff sustained actual damages (the damages element).[24]

Failure to demonstrate even one of these elements requires a finding of no liability by the fact-finder.[25]

Whether or not a particular defendant owed a duty to plaintiff is a matter of law.[26] We agree with Wal-Mart's observation that no Louisiana court has specifically addressed this type of fact pattern in order to specify the duty owed.

Plaintiffs' state court petition alleges that Wal-Mart owed a duty to warn the public of the danger in the store; to maintain its premises in a safe and orderly condition; and to use barriers to call attention to hazardous conditions.[27] Wal-Mart's motion denies that it owed plaintiffs, particularly Mr. McKinney, these duties because of the unique circumstances of the day in question.[28] Specifically, Wal-Mart argues that the store was closed to the public, had no electricity and plaintiff

---

[24] Id.

[25] Lazard v. Foti, 859 So.2d 656, 659 (La. 2003).

[26] Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La. 1984).

[27] R. 1-1 at ¶ 6.

[28] R. 12-3 at pp. 6-7.

was not there as a customer or member of the general public.[29]

Plaintiffs assert that Mr. McKinney was an "invitee" under Louisiana jurisprudence and that Wal-Mart owed him the duty of reasonable or ordinary care for his safety commensurate with the particular circumstances involved. An "invitee" is defined as

> a person who goes on the premises with the express or implied invitation of the occupant on the business of the latter or for their mutual advantage.[30]

Mr. McKinney, although not a named officer or employee of Nanimac, acted as a de facto manager prior to his injury, transmitting computerized reports, delivering deposits to his wife, and performing other managerial tasks.[31] Mr. McKinney explained that Nanimac purchased the Subway franchise from the Subway corporation and subsequently leased space from Wal-Mart through Wal-Mart's leasing subsidiary, Twin Towers under an agreement of understanding between Wal-Mart and Subway corporation.[32] Mr. McKinney also testified that the Subway restaurant owned by Nanimac

---

[29] Id.

[30] Alexander v. General Accident Fire and Life Assurance Corp., 98 So.2d 730, 732 (La. App. 1 Cir. 1957) (internal citations omitted).

[31] Mr. McKinney admits that the reason for his artificial non-employee, non-officer status within the corporation is that he now draws social security and, if he were to report additional income, the government would decrease his social security benefit accordingly. R. 12-5 at 17:7-13; 25:2 - 27:4. It is beyond doubt, however, that he served as a manager, though technically uncompensated, of the business given his admissions that his wife (who is a native of Korea) sometimes needs assistance with the English language; that he answers questions from employees about protocol; and that he occasionally filled in and baked the bread used at the restaurant. R. 12-5 at 10:21 - 11:2; 14:21 - 15:16; 22:22 - 23:5.

[32] The evidence before the court does not indicate the proper name of Subway corporation, but it is believed that Subway is a trademark belonging to Doctor's Associates, Inc. and that this parent corporation is the seller of Subway franchises. See www.subway.com/subwayroot/development.

is outfitted with a gate which rolls up and down to open and close the restaurant and that its employees work for Nanimac and not Wal-Mart.[33]

Under these facts, we find that Mr. McKinney was not an invitee, but rather, a licensee under Louisiana law and jurisprudence. A licensee is defined as

> one who enters the premises with the occupier's express or implied permission, but only (according to the conventional description) for his own purposes which are unconnected with the occupant's interests...[34]

We base this conclusion on the relationship between Mr. McKinney, his wife's restaurant and Wal-Mart as testified to by Mr. McKinney, which evidences that the interests of the restaurant and Wal-Mart are unconnected. For instance, it is possible that, because the Marksville Wal-Mart is open twenty-four (24) hours of each day and the Subway is not, that Wal-Mart may be open for business while Subway is closed and gated.[35]

The duty owed by the occupant of a premises to a licensee is to refrain from willfully or wantonly injuring the licensee and to warn the licensee of latent dangers of the premises if actually known by the occupier.[36] Having defined the duty owed by defendant Wal-Mart in this case, we now

---

[33] R. 12-5 at 18:10 - 20:25; 60:2 - 61:5. Mr. McKinney further testified that "Subway has a gate so the Wal-Mart employees don't steal you blind." Id. at 60:23-24.

[34] Arcement v. Southern Pac. Transp. Co., 517 F.2d 729 (5th Cir. 1975); Alexander, 98 So.2d at 732 (internal citations omitted).

[35] Deposition of Bernadine Noil [manually attached as an unnumbered exhibit to plaintiffs' memorandum in opposition] at p. 10. <u>The court instructs that, in the future, all exhibits to any filing shall be numbered or lettered and a listing of all numbered or lettered exhibits shall be included in any notice of manual attachment filed. Our purpose in this instruction is to effect accuracy and coherence in the record</u>.

[36] Alexander, 98 So.2d at 732-33.

turn to the element of breach.

Whether or not Wal-Mart breached its duty toward Mr. McKinney in this case is a question of fact.[37] Plaintiffs have demonstrated no evidence whatsoever that defendant Wal-Mart, through its employees,[38] willfully or wantonly injured Mr. McKinney on the day in question.

Plaintiffs similarly do not allege that Wal-Mart's employees, including manager Bernadine Noil ("Noil"), had actual knowledge of the water near the cart corral. In contrast, Noil testified that Mr. McKinney used a flashlight to walk her into and through the store during his first trip inside and, directing the light onto a puddle of water near the cart corral, pointed the water out to Noil.[39] Noil explained that she "told him just be careful because it was water down there."[40] Noil further explained that, after passing by the area at issue, Mr. McKinney accompanied her to the managerial office at the back of the store so that she could retrieve the telephone number of Clint, another manager on whom Noil was waiting to open the store to employees so that they could begin cleaning up after the storm.[41] She specified that, because it was still dark in the store, Mr. McKinney used

---

[37] Mundy v. Department of Health and Human Resources, 620 So.2d 811 (La. 1993).

[38] Under Louisiana law, a defendant corporation such as Wal-Mart, may be held liable by operation of the theory of respondeat superior for the negligence of its employees when that negligence occurred during the course and scope of the employee(s') employment and the employer could have prevented the negligent act which causes damage to another. See La. Civ. C. Art. 2320. Neither party disputes that Bernadine Noil, a manager at Wal-Mart, was acting in the course and scope of her employment at Wal-Mart when the accident at issue occurred.

[39] Deposition of Noil at 11:5-13.

[40] Id.

[41] Id. at 11:5 - 13:16.

his flashlight to help her locate the book containing Clint's phone number.[42]

Plaintiff denies that he possessed a flashlight on the day in question and even denies that he owns a flashlight at all.[43] Plaintiff similarly denies that he accompanied Noil to retrieve Clint's phone number or that she pointed out the water on the floor near the cart corral.[44] Accepting plaintiff's version of the story as true for purposes of this motion, he fails to allege that Noil or any other Wal-Mart employee knew of the water on the floor. Recalling that the duty owed by Wal-Mart is to warn of any latent dangers that it actually knows of, plaintiffs' claims fail as a matter of law.

Moreover, given that Mr. McKinney's first trip inside the store was the very first time anyone entered the store since it closed the prior day in advance of Hurricane Gustav, we also note that plaintiff has offered no evidence or authority upon which a reasonable trier of fact might base the conclusion that Wal-Mart's failure to post wet floor warnings near the area in question was unreasonable, were we to apply the duty owed to an invitee as urged by plaintiffs.[45] Also, we find that the circumstances of the day in question were unique in that the store was not open to the public. Mr. McKinney admits that he was aware that the purpose of the gathering of employees outside the store on the morning of September 3rd was to clean the store.[46] Common sense dictates that, because

---

[42] Id. at 13:8-11.

[43] R. 12-5 at 62:7-20.

[44] Id. at 62:3 - 63:9;

[45] The duty owed to an invitee under Louisiana law is that of reasonable and ordinary care, which includes the prior discovery of reasonably discoverable conditions on the premises that may be unreasonably dangerous and correction thereof or a warning to the invitee of the danger. Alexander, 98 So.2d at 732.

[46] R. 12-5 at 56:6-13.

the store was closed and had to be inspected, cleaned and reopened, defendants simply could not be expected to have wet floor signs in place at every necessary placement as soon as the doors opened for employees to begin assessing the damage to the store. After all, if the employees have not assessed the damage to the store, how would they know where to put the wet floor warnings? Finally, given that power outages, rain and flooding are routine during and after hurricanes in Louisiana, plaintiff also may not claim that he did not know of the potential hazards inside the store.

Accordingly, construing the evidence in the light most favorable to plaintiffs, we find that plaintiffs' claims fail as a matter of law because they fail to allege breach of the duty owed to Mr. McKinney as a licensee by employees of Wal-Mart. As above, plaintiffs' failure to allege breach in this case is fatal to their negligence claims under the duty/risk analysis. Given our conclusion that plaintiffs fail to allege breach by its employees, we similarly find that defendant Wal-Mart may not be held liable under the theory of <u>respondeat superior</u> and Wal-mart's motion for summary judgment as to all claims against it by plaintiffs should be granted, dismissing plaintiffs' claims with prejudice.

The court will issue a judgment in conformity with these findings.

**Alexandria, Louisiana**
**March 31, 2010**

JAMES T. TRIMBLE, JR.
U.S. DISTRICT JUDGE